I believe, is that Hurlbrink? Is that right? Yes, that's correct. Please proceed. Good morning, Your Honors. Katie Hurlbrink on behalf of Mr. Rivera. In this illegal re-entry trial case, three independent errors require reversal. You speak up a little bit. Maybe move those microphones closer to you. Is that better, Your Honor? Better, yes. Thank you. Wonderful. But today, for the sake of time, I'd like to prioritize talking about two of them. First, the superseding indictment was presumptively vindictive because, after a lengthy delay, with no change in law or facts, to no apparent strategic advantage, and shortly after an STA motion, the prosecutor filed more severe charges. Second, the district court prevented defense counsel from closing on her defense theory, stating that the district court was unbiased and ruled out basic derivative citizenship information. Thus, this court should remand to a different district judge for further vindictive prosecution proceedings, order a new trial, or both. Counsel, you're an experienced lawyer. You know that superseding indictments happen all the time. As the cases develop, there are additional charges brought with great frequency. In this case, you've got COVID. Right away after COVID was permitted this to happen, the indictment was changed and superseded. The additional penalty, if the government had been successful, would have been very minor compared to what was there before. I'm having difficulty finding anything to give some substance to any kind of a vindictive prosecution. What am I missing? Sure, Your Honor, and I think it's helpful in this case to slow down and go through the timeline bit by bit. I'd like to start by really focusing our attention on what happened before grand jury shut down. The prosecutor in this case was assigned about a week after the original indictment came down. From that point to the time that grand juries shut down, she had 11 weeks to reindict. What she did in those 11 weeks was work up the showing that she had gone through the discovery. She described the Border Patrol reports. She screenshotted the video. In this case, she knew and was familiar with the facts of Mr Rivera's case. Then, on February 5th, the party set trial. She would have six weeks between that trial setting and when grand jury shut down to reindict, and that would have been the time to do so. Judges do not like it when prosecutors switch up the charges on the eve of she didn't supersede. Then we get to mid March, right before grand jury shut down. She comes within days of her motions and lemonade deadline and three weeks of having to stand up in front of a jury and present her case, and still she doesn't reindict. Then Covid closes everything down. Trials are suspended. Most court proceedings are suspended. Nothing new happens in the case, not in Mr Rivera files a an STA motion. Then she suddenly read reindicts on superseding charges. So do you agree, counsel, that if she had simply reindicted and charged the equivalent charge, let's say she just changed, found into attempt on D. She did that for the purposes of meeting the speedy trial motion. Would that have been a problem? As long as she didn't add the requirement for any vindictive prosecution claim. So without an increase in severity, there is no claim. But what is the real increase in severity here? Obviously, there was a technical increase in severity, so it met that prong. But shouldn't we consider in the overall theory of whether there was a presumption here, the fact that it was really a minor increase in penalty? It was two years, but the guidelines didn't even change. Did they? The guidelines did not change. That's correct. So the court would have been essentially looking at the same scenario. I mean, there wasn't a real increase in penalty, except if you talk about the $100 special assessment, I suppose. But other than that, there was no really real increase in penalty. Correct? That's not correct, Your Honor. Under this court's binding case law in United States versus Motley, the way severity is assessed is to look at the maximum possible penalty. When you add up the maximum penalties and then assume that they're run concurrent, you take that calculation for the first indictment, compare it to the second indictment. Well, I agree with you. It meets the standard. But when you're looking at it overall to determine whether this presumption should exist in this case, isn't it significant that it really wasn't a practical, if you will, increase in penalty? Your Honors have treated severity as a kind of on and off criterion. Either it's satisfied or it's not. And so I would urge Your Honors to follow that case law here. But even if Your Honors were to take that into account in the totality of the circumstances, it would not this prosecutor increase the charges in response to this STA motion. They include not only this timing, but also the fact that there was no apparent strategic advantage to making this charge. Well, wasn't it easier for the prosecutor to admit certain evidence by adding the charge? In other words, more of the history, it would have been less of a problem arguing to the court that this other evidence of his past behavior should have come into evidence and isn't that a strategical reason for doing that? So first of all, Your Honor, if it were, then the government had all the information it needed to charge that at the very beginning. But more importantly, the extra 1325 felony charge actually made no difference when it came to putting additional evidence in the record. The government says that it allowed the government to put in more in-court admissions, but the government just makes a mistake. The in-court admissions in question actually came from a prior 1326 case, not a prior 1325 case. So charging a 1325 felony just made no difference there. Well, I guess what I struggle with on this is, these are really hard cases to to allege and to prove. And you've tied to that, if I recall correctly, you want us to send it to a different judge, right? Yes, Your Honor. That's a really tough standard to meet. What's your argument that that should occur in this case if we were to buy your prosecutorial misconduct, if you will, vindictive prosecution argument? Sure, Your Honor. So under Reyes, so I think there are a couple of things that cause this judge's comments to cross the line. One is under believes the defendants were attempting to manipulate the system, and that caused adamancy in the district court's rulings. And here, that standard is met. So for example, the district court stated that this motion was an instance illustrating, quote, the level to which federal defenders will go in any effort to try and obfuscate or disrupt the attempt to do justice in this district. He called it reprehensible, an abject failure to consider obligations of professionalism by the federal defender's office, vindictive, and a chronic example of how low you can go. And additionally, this court has said that if a judge's adamancy is caused by legal error, that can also be grounds for reassignment. And here, the judge wrongly thought our motion wasn't just something that should be denied, but was in fact frivolous. But the reality is, I mean, I have great empathy for the district judges. They really have to work hard to get these things right. They try very hard, and it's extremely rare for us to reassign the case to a different judge. Usually, that only happens when you get the same judge repeatedly refusing to follow the instructions of the Court of Appeal. Have you got any examples of that in this case? It is not the case that Judge Battaglia has repeatedly refused to follow Your Honor's orders. But I also want to emphasize the narrowness of the remedy that we're seeking. We're not asking for the case to be reassigned for trial. We're not asking for a sort of wholesale reassignment. We just think that Judge Battaglia's reaction to this vindictive prosecution motion meets the standard, and just for these proceedings. Do you realize that everything that your very fine department would file here would contain, hereafter, a motion to reassign it to a different judge? It would just become standard boilerplate if we reassign this case to a different judge based upon what you've alleged. Doesn't that make sense to you? Your Honor, I disagree. Judge Battaglia's comments were quite a bit more adamant than anything I've seen in my career at Federal Defenders because of the specific comments suggesting that Federal Defenders was filing the motion for manipulative purposes. So is it your position that if it's reversed and issued the vindictive prosecution that it's just that motion that you think that the judge needs to be recused on? That's correct, Your Honor. Okay. That's correct. Do you have any case law that shows a reassignment of a case to a different judge for a part of a case and then it goes back to the original judge? I don't think I've ever seen such a case. Your Honor, to be frank, I can't cite a case to you sitting here right now, but I'm happy to take a look. Just assign the whole case if you're going to reassign it to a different judge, right? I don't know, Your Honor, to be honest, but I can take a look and submit a 28-J. You want to send us a 28-J letter that has case law that shows that that happens? I'd be interested, but I I've never seen that. I've only been on the court for 18 years, but that's a while and I've seen anything like that. Understood, Your Honor. Just for the sake of time, I'd like to be able to move on briefly to my second issue. So, in addition, the district court committed structural error when he prevented defense counsel from closing on her theory of defense. All that the court did was prevent counsel from putting up that slide that he wanted to use during summation. The that was the very charge that he had rejected, and you haven't appealed the fact that he rejected that charge. But counsel was allowed to go on and make the argument about how the government had failed to investigate his alienage. So how was that error? Haven't you overstated what the court did there? I don't believe so, Your Honor, because the information on the slide was all the derivative citizenship information in the record. It was all the information that was solicited from the eight-file custodian presented in summary form, and he specifically said, this has been ruled out. So all derivative citizenship information that she could have allowed. Well, he said the charge had been ruled out, and the court was interpreting it as putting up the charge that he had said could not be given, correct? I don't believe so, Your Honor, or if he did, then that was erroneous because the theory of defense instruction laid out in extraordinary detail the particular derivative citizenship requirements, things like residency, parental citizenship. None of that was on the slide. The instructions did contain a summary, a quick summary in just a couple of sentences of this record information, but rejecting that theory of defense instruction has no make those arguments, that the government hadn't proven alienage and that their failure to investigate. Orally, he continued in his summation. He didn't preclude him from making those arguments in the summation, correct? No, that's not correct, Your Honor, because instead of being able to argue derivative citizenship failure to investigate, defense counsel had to pivot and start arguing, well, maybe he was born in the United States. That was a much weaker argument because he had repeatedly said he was born in Mexico, and I'd like to reserve the remainder of my time. Thank you. When you're at the table, I'm interested to get your response about how this case differs from Espinosa-Bassa in this particular instance. Yes, Your Honor. Very well. Let's hear from Ms. Stahl. Good morning, Your Honor, and may it please the court. Jacqueline Stahl for the United States. Timing alone is insufficient to trigger the threshold finding for a presumption of vindictiveness. And even as we stand here today, that is all Rivera points to. Rivera says that there were six weeks between the motion hearing on February 5th and the proposed trial date that was set in April. But that ignores that COVID-19 shut down the world. And the last grand jury that had quorum was March 12th. Even the chief judge did not shut down the grand jury until March 17th. So it ignores the reality that COVID was creating problems well before the chief judge even officially shut down the grand jury. Further, if we look at the five months between the first and second indictment, putting aside sort of the closure of the court and the time between the motion to dismiss filing in the ruling, what about the period of time between the first and second indictment? Your Honor, it was 11 weeks between when the new prosecutor came on the case and the grand jury shut down. And those 11 weeks are indistinguishable from the six week delay in Goodwin that the Supreme Court found did not rise the presumption. Then if we take out the time of COVID, when of course the prosecutor physically could not seek a superseding indictment, she picked up where she left off and sought the superseding indictment to prepare for trial. She two days later filed a motion in limine. She then filed a trial memorandum, jury instructions, witness list, Rivera filed motions in limine, and the district court ruled on the motions in limine in June before continuing the trial date ultimately to if we are to look at the timing, the timing is not suspect because the prosecutor was objectively preparing the case for trial. Then if we look at the nature or the increase in the penalty, as your Honor mentioned, it's important to remember that the Motley case is pre-Goodwin. The Motley case was a retrial case and was an increase of 10 years. This was all pretrial litigation. It was not a substantial or meaningful increase in penalties. Further, but for causation without retaliation is insufficient. We object that the superseding indictment was sought because of the Speedy Trial Act motion, but even if it were, that alone is not sufficient. This court has explained multiple times that a defendant will often invoke procedural rights pretrial that will necessarily burden the prosecution. This court stated that it is unrealistic to presume a prosecutor's probable response to invoking those rights is to retaliate and bring charges not in the public interest. That is all the more clear here where the increase was a potential two years that realistically wouldn't apply because the guidelines remain the same, and the guidelines counsel the concurrent sentence and the hopefully once in a lifetime COVID pandemic. Turning to your Honor, your Honor's comments about reassignment. This is not a rare, extraordinary or an unusual case warranting reassignment. Context is key. The district court's admittedly strong comments were rooted in Rivera's claims of actual vindictiveness, a claim he doesn't appeal here. The actual vindictiveness standard is punitive or hostile animus. Rivera made that claim in three sentences, accusing the prosecutor of being hostile and directly punitive towards this defendant. The only evidence hasn't the judge made clear, though, exactly based on the comments that is made how he would decide this. How is he going to put aside his view that their conduct was reprehensible, that the U. S. Attorney's Office is always engaged in exemplary conduct? How can that be put aside in terms of reevaluating this issue where the court to remand the case and even if the judge can put it aside, isn't there an appearance issue, um, with regard to the judge's conduct just with respect to this issue? Respectfully, no, your Honor, because for two reasons. First, it's clear from the record that the judge's strong comments were tied directly to actual vindictiveness. The comments were there is no evidence of actual vindictiveness to bring this motion on no evidence is reprehensible. That's what the court would have to review the evidence and would have to decide because the presumption is beside the point. Now he'd be deciding the actual vindictiveness, correct? And that's what if we remanded it, that's what the court would have to decide. And this is he's decided against presumably a an office that he has said engages in exemplary conduct and has described defendants actions or defense counsel's actions is reprehensible. How on the record could it be seen that the judge could decide that fairly? Has any prejudged the issue? No, your Honor, because Rivera does not appeal actual vindictiveness, and that would not be an issue on remand. If this court were to find that the threshold has been met and the burden shifts back to the government, the government would put forth reasons for why it brought the superseding indictment that were non vindictive. So this would be a show that it wasn't actually vindictive. Yes, your Honor. But the district court's comments regarding, uh, I understand your point. I think I would rely on the Doe case. And in the Doe case, this court found that are my apologies. I want to distinguish the Reyes case. In that case, the judge made comments at sentencing post trial directly directed at the defendant. Here the comments were at defense counsel, and later the district court stated that it could that it didn't affect his view of defense counsel. He could be fair. Rivera would receive a fair trial, and the record throughout shows that the district on a different issue. I mean, that's on the fairness of the judge to preside over the trial is a trial. I mean, as the chief judge has pointed out here, um, our presiding judge rather that it may be a unique circumstance where you would not where some issue couldn't be decided fairly, but you're remanding on the entire case. Your Honor, I'm not aware of any case that would allow a one off reassignment. And I would say that the other elements of a reassignment test would counsel against that. Here, the vindictiveness issue would be very fact dependent. This district judge lived with this case through the pandemic. That cannot be ignored. It would be very difficult and a duplication of efforts for a new district judge to have to look at this evidence and determine the vindictiveness issue. But turning again to the I want to respond to some arguments regarding the closing. I think it's important to look at what the district judge actually did. The district judge said, quote, It is the law that I have excluded. And your honor was exactly correct. The district judge was preventing defense counsel from from instructing the jury on law that the district
judges: SMITH, DESAI, Amon